IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:12-CR-356-D (01) |
| VS. | § | |
| | § | |
| GEORGE PICKENS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

        Defendant George Pickens ("Pickens")—charged with possession of methamphetamine with intent to distribute and possession of an unregistered firearm—moves to suppress all the evidence seized from the search of his residence pursuant to a warrant. He contends, *inter alia*, that the warrant is invalid and that the items seized under the plain view doctrine were not in plain view. Following an evidentiary hearing, and for the reasons that follow,[1] the court denies the motion.

I

        The events leading up to the search of Pickens' residence by officers of the Mesquite, Texas Police Department ("MPD") began on October 7, 2012.[2] Angela Massey ("Massey") contacted the MPD to report that, while on the website www.facebook.com, she viewed a

_____

        [1]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

        [2]The parties do not dispute the facts leading up to the search, which are recited from the affidavit of MPD Officer S. Hanley, on which the search warrant was based.

photograph of a man with the description "UNDERCOVER MESQUITE NARCOTICS," and a caption on the picture reading, "ANYONE KNOW THIS B--CH." D. App. 6. Massey informed the operator that Melissa Walthall ("Walthall") had posted the photograph and text. The photograph was of MPD Officer Andrew Chance ("Officer Chance"), an officer assigned to the MPD narcotics unit.

MPD Officer Heidelberg returned Massey's call for the purpose of interviewing her further.  Massey stated that she had seen the photograph and accompanying text while checking the "News Feed" section of Facebook.  She described the photograph as showing a "white male with blonde/brown hair, and a white or light blue shirt."  Massey related that she had known Walthall since 1999 and that Walthall had recently "gone off the deep end with Methamphetamine use" and associating with "crazy people."  *Id.*

An MPD investigator checked Walthall's Facebook web page and viewed the comments people had made to the picture Walthall had posted. Massey had commented, "WTF are you doing[?] [H]ave you lost your mind[?]  Now what are you gonna do [i]f something happens to this guy because you[] posted his pic[?]" *Id.* (bracketed changes made by the court for grammatical clarity).  Responding to this comment, a Facebook "friend" of Walthall's and a confirmed member of the Aryan Brotherhood of Texas, wrote, "If s[ome]thing happens to an undercover, then he had that s[--]t coming!  PERIOD!" *Id.* (bracketed changes made by the court).

Officer Chance, the subject of the photograph, advised the MPD investigator that he did not know or recognize Walthall, and that she did not have authorization to use or post his

photograph.  The MPD obtained a warrant for Walthall's arrest for the state-law crime of harassment, and then arrested and booked her into the police department.

In an interview with MPD Investigator Meek, Walthall stated that she posted the photograph and text because, approximately two months earlier, Officer Chance had testified against her friend.  She also stated that, three weeks earlier, she had seen a flyer with the same photograph of Officer Chance.  Walthall refused to identify the friend against whom Officer Chance had testified.

While investigating Walthall's statements, Investigator Meek discovered that Officer Chance had testified against Pickens on August 24, 2012.  Investigator Meek found evidence that Pickens and Walthall were acquainted—a computer record showed there was a hit-and-run incident in which Pickens was a passenger in the vehicle with Walthall.  The MPD investigators believed that Pickens was the friend whom Walthall had refused to identify, and that he was involved in retaliating against Officer Chance for testifying against him, in violation of Tex. Penal Code Ann. § 36.06 (West 2011).

The investigators determined the address of Pickens' residence.  Officer S. Hanley ("Officer Hanley") filed an affidavit for a search warrant, averring that he believed, based on his training and experience, that further evidence of Pickens' involvement in retaliating against Officer Chance could possibly be located at Pickens' residence.  City of Mesquite Municipal Judge Stephen Crane ("Judge Crane") signed the search warrant on October 8, 2012.  The warrant authorized officers to search Pickens' residence and seize, *inter alia*, computers, data storage devices, equipment able to capture images or video, correspondence

with Walthall, and items referring to Officer Chance.  MPD officers executed the search warrant within one hour of its being signed.

After Pickens' residence was secured, MPD officer James McNair ("Officer McNair"), an MPD crime scene investigator, began conducting the search.[3]  While taking photographs of the inside of the residence, Officer McNair identified Pickens' bedroom.[4]  He then entered the bedroom and, after taking photographs (starting on the left and working his way back around to the right so as to cover the entire room), Officer McNair conducted a clockwise search of the entire room, starting with a dresser ("the first dresser"), which was the first object on his left.

When Officer McNair opened the top drawer of the first dresser, he observed a clear plastic baggy with methamphetamine located on the lower left-hand side of the drawer.  *See* Gov't Exh. 8.  Officer McNair believed that the substance in the baggy was crystal methamphetamine, that it was a larger amount than would be used for a single use, and that it was used for selling.  Using a field test kit, he confirmed that the substance was methamphetamine, although, based on his belief that it contained a controlled substance, he would have seized the baggy even without a confirming field test.

---

[3]Officer McNair conducted the search, but he was accompanied by another officer who took notes.

[4]Officer McNair began his search of the residence by photographing it.  During this process, he observed several photographs of Officer Chance located atop the television in one bedroom.  When he showed the photos to Pickens and said the pictures were in the front bedroom, Pickens acknowledged that the room was his bedroom.

Moving clockwise around the room, Officer McNair next searched in and around the bed. Underneath the pillows on the bed he observed a small black zippered overnight bag that contained drug paraphernalia. When Officer McNair photographed the bedroom initially, he moved the pillows and discovered the black bag, continued taking his pictures, and came back to the bag during the search. The bag was closed when he found it, but it was capable of containing items that the search warrant authorized him to seize. When Officer McNair unzipped the bag, he found inside several small baggies, including one that contained what he believed to be crystal ice, as well as a spoon that appeared to have residue on it, and other items. Based on his police officer training in identifying controlled substances and his work as a crime scene investigator, he had had occasions to observe controlled substances. Based on his training and experience, he believed as soon as he saw the substance that it was crystal methamphetamine.

Officer McNair also observed a canvas bag situated on the left side of, and partially underneath, the bed. *See* Gov't Exh. 10. The bag had a zipper that was partially zipped. He saw that the bag was large enough to contain electronic items included in the search warrant. Officer McNair pulled the bag out from its location, fully opened it, and looked inside. He immediately observed a shotgun that, due to the dimensions of the bag, could possibly be too small. He saw that the stock of the shotgun was missing, and it appeared that the front of the shotgun, where the barrel is located, had been modified by someone other than a factory or a gunsmith. Based on his experience and training, he was aware of the minimum lengths necessary for a shotgun to be legal. When he observed the bag that contained the shotgun,

the bag appeared to be too small to contain a legal-sized shotgun.  Based on what he had found in the execution of the warrant to that point (e.g., the baggy containing methamphetamine), Officer McNair believed the gun was evidence of an offense—that it might have been used in connection with the drugs.  He had no reason to believe this firearm was registered with ATF.  Even if he had not believed the shotgun was too short to be legal, he would have seized it anyway in conjunction with the amount of the illegal narcotics found at the location.  He believed the gun was evidence relevant to drug distribution.

Officer McNair then proceeded to search another dresser ("the second dresser") located to the right of the bed, where he found a Llama 9 millimeter pistol located in the top left-hand drawer, the first that he searched.  *See* Gov't Exh. 13.  The pistol was situated right at the top, covered by a shirt.  This drawer of the second dresser was large enough to contain some of the items listed in the search warrant.  When Officer McNair opened the drawer, he did not see the pistol immediately.  He observed it when he started moving the items in the drawer.  Officer McNair seized the pistol based on his belief that it was evidence of drug distribution, a belief he formed when he saw the amount of narcotics in the very first drawer he opened.

Officer McNair seized several other items, including a computer hard drive, cell phones, a spiral notebook, paperwork with photos, a modem , and a mini tracker.

Pickens was later indicted for the offense of possession with intent to distribute a controlled substance, that is, knowingly possessing with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); and for

possession of an unregistered firearm, that is, knowingly receiving and possessing a weapon made from a shotgun, having no serial number, as modified having a barrel less than 18 inches in length, and an overall length of less than 26 inches, which was not registered to the defendant in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5845(a)(1) and (2), 5861(d), and 5871.[5]   He moves to suppress on grounds that the warrant lacked probable cause and the good-faith exception does not apply.  He also asserts that, even if the warrant was valid, the plain view doctrine does not apply to the seizure of items not listed in the warrant such as, *inter alia*, the firearms, methamphetamine, and drug paraphernalia.  The government opposes the motion.

## II

In reviewing a search pursuant to a warrant, the court engages in a two-step inquiry. *United States v. Newton*, 2010 WL 1460052, at *7 (N.D. Tex. Apr. 13, 2010) (Fitzwater, C.J.) (citing *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003)), *aff'd*, 463 Fed. Appx. 462 (5th Cir. Mar. 8, 2012).  First, the court determines whether the good-faith exception to the exclusionary rule applies.  *Payne*, 341 F.3d at 399 (citing *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir. 1997)).  If it does, the court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'"  *Id.* (citing *Pena-Rodriguez*, 110 F.3d at 1129-30).  Second, if the good-faith

---

[5]The indictment also contains a forfeiture notice.

exception does not apply, the court proceeds to a determination of whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *Pena-Rodriguez*, 110 F.3d at 1129-30.

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Pope*, 467 F.3d 912, 917 (5th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23). Normally, the issuance of a warrant by a magistrate suffices to establish an officer's good faith. *Messerschmidt v. Millender*, ___ U.S. ___, 132 S.Ct. 1235, 1245 (2012). But the good-faith exception does not apply in any one or more of the following four circumstances: (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *See Leon*, 468 U.S. at 923; *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012).

III

Pickens maintains that the good-faith exception is inapplicable because each of these four circumstances is present here.[6]

A

Pickens maintains that Officer Hanley's affidavit includes information that he knew was false, or would have known was false except for reckless disregard of the truth. He posits that the misleading statement is Officer Hanley's conclusions that Pickens was involved in retaliation against Officer Chance and that further evidence could possibly be located at his residence. At the hearing, Pickens clarified that the reckless disregard of the truth to which he objects is primarily the conclusion Officer Hanley reached—that a crime had occurred and that Pickens was connected with that crime—rather than the underlying facts supporting this conclusion.

1

The good-faith exception is inapplicable if, in issuing the warrant, the magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). If Pickens can demonstrate intentional falsity or reckless disregard by a preponderance of the evidence, then he avoids the good-faith exception and the court must excise the false statement and determine if the remaining portions of the

---

[6]Pickens' brief maintains that the first three circumstances are present; he contended at the hearing that the fourth circumstance also applies.

affidavit establish probable cause. *Newton*, 2010 WL 1460052, at *8 (citing *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002)).  A defendant bears the burden of showing both that the affiant made a false statement or misrepresentation, and that it was done intentionally or with reckless disregard for the truth.  *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008) (per curiam) ("[E]ven if the defendant proves that one or more statements in the affidavit are false, and yet fails to prove that the affiant deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit—without any excision—under the good-faith exception to the exclusionary rule."). To be entitled to an evidentiary hearing on this ground for avoiding the good-faith exception, Pickens "must make a 'substantial preliminary showing' that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause." *United States v. Simpson*, 2011 WL 721912, at *11 (N.D. Tex. Mar. 2, 2011) (Fitzwater, C.J.); *see also United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002). In determining whether an affiant acted intentionally or with reckless disregard, "a court considers the materiality of the misrepresentation, whether exigency or haste preceded the affidavit, the officer's level of training and experience, whether the officer consulted with an attorney, and whether the officer disclosed the fact[s] underlying any conclusory statements in the affidavit." *Newton*, 2010 WL 1460052, at *8 n.12 (citing *United States v. Gallegos*, 239 Fed. Appx. 890, 895 (5th Cir. 2007)); *see also United States v. Alvarez*, 127 F.3d 372, 375 (5th Cir. 1997) (concluding based on these considerations that officer acted

in reckless disregard for truth).

2

The affidavit statement at issue is Officer Hanley's conclusion that, based on his training and experience, he believed further evidence of Pickens' involvement in the retaliation against Officer Chance could possibly be found at Pickens' residence. Pickens does not assert that any of the facts underlying this conclusion are false, but rather maintains that Officer Hanley acted recklessly in concluding that Pickens was involved in a crime of retaliation because he did not conduct additional investigation. Regarding the factors for determining whether an officer acted intentionally or with reckless disregard, Pickens posits that Officer Hanley failed to disclose facts underlying his conclusory statement, faced no exigent circumstances in drafting the affidavit, and was experienced.

Pickens has failed to meet his burden to show that Officer Hanley made a false statement intentionally or with reckless disregard for the truth. Pickens does not offer any proof or explanation—apart from conclusory assertions—that any of Officer Hanley's averments was false or a misrepresentation of the facts. In *United States v. Mueller* the defendant sought to prove the falsity of an officer-affiant's statement about smelling methamphetamine outside the defendant's residence by introducing evidence from a meteorology professor who maintained that it was "unlikely" the officer detected an odor from his position. *United States v. Mueller*, 902 F.2d 336, 342-43 (5th Cir. 1990). The Fifth Circuit held that the professor's evidence, which made certain assumptions about wind measurements and strength of the odor, "d[id] not amount to a substantial preliminary

showing that [the officer] made any misrepresentation in stating that he smelled methamphetamine from across the fence, much less a substantial preliminary showing of intentional or reckless misrepresentation." *Id.* In comparison, Pickens' motion is even more deficient in failing to offer any evidence of falsity or of Officer Hanley's acting intentionally or recklessly in making such a statement.

Pickens instead essentially relies on the contentions that Officer Hanley's conclusion was reckless because he did not conduct further investigation and that the affidavit lacks sufficient factual support. This argument seems to challenge whether probable cause existed, which this court need not reach unless Pickens can avoid the good-faith exception. Even so, the court finds that, in light of the facts in the affidavit, Officer Hanley's conclusions were not reckless. *See infra* § III(B)(2) (examining affidavit's facts); *see also Brown*, 298 F.3d at 399, 404 (holding that officer's conclusion in affidavit about identity of unnamed person was not made with reckless disregard for truth because underlying facts made such deduction reasonable).

Because Pickens has failed to make even a substantial preliminary showing that Officer Hanley made a false statement intentionally or with reckless disregard for the truth, it is unnecessary for the court to convene an evidentiary hearing on this ground of his motion, *see United States v. Sibley*, 448 F.3d 754, 758-59 (5th Cir. 2006), and he is not entitled to avoid the good-faith exception on this ground.

B

Pickens also maintains that the good-faith exception is inapplicable because the warrant is based on a "bare bones" affidavit. He contends that the affidavit is wholly conclusory because it does not contain facts that connect Pickens to Walthall's posting on Facebook, or that establish a nexus between Pickens' residence and evidence of retaliation. At the hearing, Pickens also asserted that the affidavit fails to show a basis for a retaliation charge under Texas law or how he was involved. He objected that the affidavit lacks concrete facts and contains too much speculation to demonstrate probable cause.

1

The good-faith exception does not apply when a warrant is obtained with a "bare bones" affidavit—an affidavit that contains "wholly conclusory statements, the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). An affidavit need not, however, contain direct evidence that supports probable cause; a magistrate can make inferences and draw commonsense conclusions from an affidavit. *See, e.g., United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991); *United States v. Wylie*, 919 F.2d 969, 975 (5th Cir. 1990). Similarly, an affidavit can establish the required nexus between the evidence sought and the location to be searched through "direct observation" or "normal inferences as to where the articles sought would be located." *See United States v. Perry*, 442 Fed. Appx. 985, 987 (5th Cir. 2011) (per curiam) (citing *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)); *United States v. Laury*, 985 F.2d 1293, 1313 (5th Cir. 1993). Because

- 13 -

the good-faith inquiry is "'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization,'" *see Pope*, 467 F.3d at 916 (quoting *Leon*, 468 U.S. at 922 n.23), the issue is not whether the affidavit establishes probable cause, but whether the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted).

An affidavit is bare bones, for example, if it merely states that the affiant "'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *See, e.g., Pope*, 467 F.3d at 920. The Fifth Circuit has concluded that an affidavit was bare bones when it stated only that "Captain Solomon 'received information from a confidential informant' who is 'known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions.'" *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986).

2

Although the affidavit in this case does not contain direct evidence that Pickens was involved in retaliation, it provides enough "facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321. The affidavit includes Walthall's explanation that she posted the photograph and text because Officer Chance had testified against her friend approximately two months beforehand. Walthall refused to name her friend, but the MPD investigators were able to determine two facts that indicated that Pickens was that friend. First, Officer Chance testified against Pickens on

- 14 -

August 24, 2012, which was approximately two months before Walthall's interview on October 7 or 8. Second, the investigators located a computer record indicating that Walthall and Pickens had been together in a vehicle during a hit-and-run incident. And although, according to the affidavit, Walthall did not mention that others were involved in posting the photograph on Facebook, she stated that she had seen a flyer with Officer Chance's photograph. This statement indicates that someone else made the flyer, meaning that at least one other person was involved. Because the affidavit provides sufficient facts from which a magistrate could draw commonsense inferences to find probable cause, it is not bare bones.

Officer Hanley's affidavit is also sufficient to support a finding of probable cause to search Pickens' residence. Affidavits are generally sufficient if the officer–affiant includes a statement such as, "based on training and experience, individuals who commit crimes tend to keep evidence in their homes." *See Laury*, 985 F.2d at 1314 (holding that such a statement about an officer's training and experience was sufficient to establish nexus with defendant's residence when evidence was not found at scene of illegal activity). Officer Hanley averred that "[t]hrough [his] training and experience he believe[ed] further evidence of George Pickens' involvement in the retaliation . . . could possibly be located in [Pickens'] residence[.]" D. App. 7. This statement provides sufficient indicia of probable cause as to the location nexus, meaning that the affidavit is not bare bones in this respect either. *Accord United States v. Fields*, 380 Fed. Appx. 400, 403-404 (5th Cir. 2010) (per curiam) (holding affidavit was sufficient that inferred defendant was still involved in drug trafficking and that stated, based on officer-affiant's law enforcement experience, that such criminals keep drug

paraphernalia at their homes).

Pickens has failed to show that the affidavit on which the search warrant is based is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). Accordingly, Pickens is not entitled to avoid the good-faith exception on this ground.

## C

Pickens also contends that the good-faith exception is inapplicable because, in issuing the warrant, Judge Crane wholly abandoned his judicial role. Pickens maintains that Judge Crane was not "neutral and detached" because, as a Mesquite municipal judge, he presumably works closely with the MPD, he had served as a Mesquite assistant city attorney, and he approved a bare bones affidavit.[7] At the hearing, Pickens asserted that there is an appearance of impropriety from the close relationship between the actors involved in obtaining the warrant: Mesquite investigators sought a warrant from a Mesquite judge who had been a Mesquite prosecutor, regarding a case where the victim was a Mesquite police officer.

## 1

"The *Leon* exception for a magistrate's abandoning his judicial role is applied infrequently and only in extreme cases." *Newton*, 2010 WL 1460052, at *15. Examples of

---

[7]Pickens also posits that the judicial process of authorizing the search warrant appears biased because the MPD requested a warrant from a judge in Mesquite rather than a magistrate from elsewhere in Dallas County. There is no requirement that police officers seek a warrant from a magistrate outside their city.

such extreme cases include when the issuing magistrate has a pecuniary interest in issuing the warrant or actively participates in the police investigation underlying the warrant. *See United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009). And even if Judge Crane abandoned his judicial role and rubber-stamped the warrant, "the warrant is valid if the officer may reasonably rely on the judge's neutrality." *United States v. Shaw*, 252 F.3d 1356, 2001 WL 422828, at *4 (5th Cir. Apr. 4, 2001) (unpublished) (citing *United States v. Breckenridge*, 782 F.2d 1317, 1321 & n.2 (5th Cir. 1986)).

2

Pickens fails to assert any fact that demonstrates bias or prejudice. Judge Crane's former service as a Mesquite assistant city attorney, without more, does not impugn his neutrality and detachment with respect to this investigation. *See United States v. McKeever*, 906 F.2d 129, 131 (5th Cir. 1990) (holding that former involvement in law enforcement activities does not destroy magistrate's neutrality, even though magistrate was former reserve police officer and her husband was reserve deputy in sheriff's department). Nor is Pickens' assumption that a municipal judge works closely with that city's police department evidence of the judge's bias. And Pickens' argument that Judge Crane issued the warrant based on a bare bones affidavit is more aptly addressed, not as evidence of bias, but as a ground for overcoming the good-faith exception based on a bare bones affidavit.[8] *See United States v.*

---

[8]For purposes of challenging the good-faith exception, treating a judge's approval of a bare bones affidavit as evidence of bias is either redundant, if the affidavit is actually bare bones, or moot, when, as here, the court holds that the affidavit is not bare bones.

- 17 -

*Cherna*, 184 F.3d 403, 408 n.1 (5th Cir. 1999) (rejecting similar argument because such

deficiency in affidavit is independent reason not to apply good-faith exception).

D

At the hearing, Pickens contended that the warrant was facially deficient because it

failed to state with particularity the things to be searched.  He acknowledged that the warrant

listed particular items, but he maintained that it was overbroad in listing all things electronic

and computer related.

To overcome the good-faith exception on this basis, the warrant must be "so facially

deficient . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468

U.S. at 923.  Therefore, even if the warrant violated the Fourth Amendment's requirement

to "particularly describ[e]" the things to be seized, the good-faith exception still applies

unless the executing officer could not reasonably have concluded that the warrant was valid.

*See United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) ("[N]ot every deficient warrant

is so deficient that an officer would lack a reasonable basis for relying on it.").

The search warrant in this case particularly describes the items to be seized.  *See*

Gov't Exh. 1. The warrant is not so facially deficient that Officer McNair could not

reasonably have considered it valid.

E

Because the court holds that the good-faith exception applies, and this case does not

present any novel legal questions, the court need not reach whether the warrant was

supported by probable cause. *See Payne*, 341 F.3d at 399.[9]

## IV

Pickens maintains that, even if the warrant was valid, the plain view doctrine does not apply to validate the seizure of items not listed in the warrant, such as the firearms, drugs, and drug paraphernalia.

## A

Although the warrant to search Pickens' residence did not extend to the firearms, drugs, and drug paraphernalia that Pickens seeks to suppress, a warrantless seizure is permissible under the plain view doctrine if "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was immediately apparent; and (4) the police had a lawful right of access to the item." *Newton*, 2010 WL 1460052, at *13 (quoting *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006)) (internal quotation marks omitted).

Pickens maintains that the firearms, drugs, and paraphernalia were not in plain view because Officer McNair had to open dresser drawers or unzip bags to see the items. He also asserts that the plain view doctrine only applies to items an officer finds inadvertently by stumbling upon them, not by opening containers or drawers.

---

[9]Pickens also challenges the affidavit on the ground that the offense of retaliation is a false allegation because the facts do not show that retaliation under Texas law actually occurred. This contention appears necessarily to be subsumed within the question whether the warrant was supported by probable cause, which the court need not reach because the good-faith exception applies.

B

As a threshold matter, the court rejects Pickens' position that the plain view doctrine requires that discovery of contraband be inadvertent. *See Horton v. California*, 496 U.S. 128, 103, 137 (1990). Nor does the court agree with Pickens' contention that the doctrine covers only items that an officer can see without moving anything in a room or opening a container. The plain view doctrine is an exception to the general rule that only items described in a search warrant can be seized. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). The doctrine allows seizure "where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character." *Id.* (citation omitted); *see also Kentucky v. King*, ___ U.S. ___, 131 S.Ct. 1849, 1858 (2011) ("[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made."). Provided that the search remains within the scope delineated by the warrant—i.e., limiting the search to places where items identified in the warrant could be concealed—the seizure of incriminating items found during that search is permitted. *See Horton*, 496 U.S. at 139-142 (explaining doctrine and upholding seizure of firearms not listed in warrant where warrant authorized search for proceeds of robbery, including items as small as rings); *see also United States v. Hill*, 19 F.3d 984, 986, 989-90 (5th Cir. 1994) (approving seizure of check stubs during lawful search under warrant for other types of financial records, where check stubs were found stored with bank statements and canceled checks in drawers and boxes); *United States v. Gereb*, 547

F.Supp.2d 658, 664 (W.D. Tex. 2008) (approving seizure of handgun found in safe while searching for documentary evidence identified in warrant).

C

Officer McNair's seizure of the firearms, drugs, and paraphernalia satisfies each element of the plain view doctrine.  First, he lawfully entered the bedroom where the items were located.  He was in the residence pursuant to a search warrant, and he determined from Pickens which room was his bedroom.  Because the warrant described items as small as memory cards and memory sticks, which Officer McNair testified can be as small as a stamp, he was authorized under the warrant to open and search dresser drawers, move pillows located on a bed, and unzip zippered bags that were located partially under a bed.  Pickens does not contest that the places Officer McNair searched could not have contained items listed in the warrant.  He instead essentially posits that contraband cannot be in plain view if the officer must take steps to reveal the item.

Second, Officer McNair testified that in the course of searching the dresser drawers, the black bag, and the canvas bag, he observed in plain view the firearms, drugs, and paraphernalia.  Officer McNair found the larger baggy of methamphetamine in the top drawer of the first dresser, and it was in plain view when he opened the drawer.  The shotgun was in plain view when he unzipped the canvas bag that was situated partially under the bed.  On opening the black bag located under the pillows on top of the bed, he observed a small baggy of methamphetamine and paraphernalia.  He discovered the pistol in the top drawer of the second dresser.  Although it was initially covered by a shirt, it came into plain view

- 21 -

as he searched the drawer.

Third, the incriminating nature of the items was immediately apparent.  When Officer McNair opened the top drawer of the first dresser, he observed a clear plastic baggy that he believed contained a quantity of crystal methamphetamine that was used for selling.  When Officer McNair unzipped the small black zippered overnight bag found under the pillows on the bed, he found inside several small baggies.  Based on his training and experience, he believed that one baggy contained crystal methamphetamine, as well as a spoon that appeared to have residue on it.  When Officer McNair opened the canvas bag situated partially under the bed, he immediately observed a shotgun that had a missing stock and, based on his experience and training, he believed was too small to be legal.  Additionally, based on what he had found so far in executing the warrant, he believed the gun was evidence of illegal narcotics distribution.  And when Officer McNair searched the second dresser, he found a pistol that he believed was also evidence of drug distribution.

Fourth, Officer McNair had a lawful right of access to the items, and Pickens does not contest that any legal or physical barrier existed that prevented seizure of the items.

Accordingly, the court finds that the government proved by a preponderance of the evidence that the MPD lawfully seized the challenged evidence under the plain view doctrine.

\*   \*   \*

For the reasons explained, the court denies Pickens' motion to suppress.

**SO ORDERED**.

March 21, 2013.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE